UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:19-CR-83-CHB-HAI |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| TYLER ROSE, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Tyler Rose has moved to suppress evidence obtained from his vehicle. D.E. 56. The government responded in opposition. D.E. 58. No reply was filed. The Court conducted a teleconference on February 4, 2021, during which the parties agreed that no hearing was necessary and the matter could be decided on the briefing. D.E. 60. The motion should be denied.

Defendant was indicted in December 2019 for one count of possession with intent to distribute 50 grams or more of a methamphetamine mixture and possessing a firearm in furtherance of a drug trafficking offense. D.E. 7. This indictment followed the issuance of a complaint. D.E. 1.

The only potential factual issue concerns the certification status of the K-9 officer and his dog involved in the search of Defendant's vehicle. Otherwise, the facts are not disputed.

The complaint affidavit describes a controlled drug buy between Defendant and a confidential informant that led to the search of Defendant's vehicle:

> On November 26, 2019, the FBI conducted a controlled meeting between ROSE and the CI at a McDonalds in Somerset, KY. Officers conducted

surveillance of ROSE's vehicle during the arranged meeting. During the meeting ROSE provided the CI with approximately eight grams of methamphetamine. ROSE instructed the CI to deliver the said methamphetamine to a buyer in a local hotel. After ROSE supplied the CI with methamphetamine law enforcement approached ROSE before he could leave the McDonald's parking lot. ROSE was detained on suspicion of trafficking narcotics. A K-9 unit, that was onsite during the arranged methamphetamine transaction, was deployed around ROSE's vehicle. The K-9 unit indicated the presence of narcotics in the vehicle and a search was conducted of ROSE's vehicle.

During the search of the vehicle approximately four ounces of methamphetamine was found in a box located in the driver's floor board. The four ounces of substance field tested positive for methamphetamine and had an appearance consist with methamphetamine in the onsite officer's training and experience. A loaded handgun, high point 9 mm, was found in a bag located on the passenger side of the vehicle. A second handgun was located in the trunk of the vehicle.

D.E. 1-1 at 2-3.

The description of the events from Defendant's motion is much the same:

On November 26, 2019, law enforcement, with use of a confidential witness ("CW"), were conducting a narcotics investigation involving the defendant, which led to observation of the defendant in a McDonald's parking lot. Law enforcement observed defendant – after meeting the CW at the CW's vehicle, and as the CW notified law enforcement that he/she had just been handed a baggie containing over 7 grams of suspected methamphetamine – walk back and enter the driver's side of his vehicle, a silver Nissan. . . . Law enforcement approached, identified themselves, and asked the defendant to step out of his vehicle (the silver Nissan also contained one male and one female passenger). When asked, the defendant denied consent to search his vehicle. Sergeant Smith deployed K-9, "Giro," and conducted an inspection of the vehicle. Sergeant Smith advised that Giro gave the indicating signs that illegal narcotics has been present in the vehicle. Law enforcement searched the vehicle, and in a wooden box in the driver's side of the vehicle found a baggie containing suspected methamphetamine, and paraphernalia such as syringes and spoons. Elsewhere in the vehicle law enforcement discovered several weapons, multiple mobile phones, and U.S. currency.

D.E. 56 at 1-2.

Defendant's argument is as follows:

> Later investigation by the defendant revealed that the K-9 involved in the incident, Giro (while having undergone previous certification in a different jurisdiction by a previous handler) and his handler in this case, Sergeant Smith, did not complete joint certification by the National Narcotic Detector Dog Association in "Tracking, Narcotics Detection, and Patrol" until December 17, 2019, approximately three (3) weeks after the incident in this case leading to the defendant's arrest. *See* Exhibit A. To the extent that law enforcement relied on the behavior of the K-9, Giro, in this case to establish probable cause to search the defendant's vehicle, such amounts to insufficient cause, as Giro (with Sergeant Smith) had not met standards of reliability. *See generally Florida v. Harris*, 568 U.S. 237 (2013).

D.E. 56 at 2. To be clear, Defendant's *only* challenge to the vehicle search concerns the certification of the dog and his handler.

The government asserts in its response brief that

> [a] probable cause finding based on Giro's alert . . . need not be reached because law enforcement had an independent basis to search the vehicle.
>
> A court need not determine the legality of a dog sniff if probable cause is available from an independent source. *United States v. Bush*, 2013 WL 4517155 (11th Cir. Aug. 27, 2013). Here, law enforcement had probable cause to search the vehicle based upon the buy/bust operation and had the ability to search the vehicle incident to Rose's arrest.

D.E. 58 at 2.

At the February 4 teleconference, the parties agreed that the material facts did not appear to be in dispute and no hearing would be necessary. D.E. 60. Defense counsel stated (as transcribed from the courtroom audio recording):

> The only [facts] that could be in dispute potentially would be underlying facts concerning the reliability of a canine sniff. But other facts about the investigation are not in dispute . . . . Basically, if those facts would establish sufficient cause for the search, then it would seem not to be necessary to have a hearing.

The Court agrees with the parties that no hearing is necessary. The Court also finds the motion is meritless. As correctly noted by the government, the dog's activity is irrelevant

because, even before the dog sniff, law enforcement possessed probable cause to search Defendant's vehicle based on the controlled buy.

Officers may conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (citations omitted). Probable cause to search exists when the available facts would warrant a person of reasonable caution to believe that evidence of a crime is present. *Florida v. Harris*, 568 U.S. 237, 243 (2013). This practical and common-sense standard considers the totality of the circumstances and requires only the kind of fair probability upon which reasonable and prudent people would act. *Id*. at 243-44. Probable cause requires "'less than *prima facie* proof but more than mere suspicion.'" *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (citations omitted) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). The court does not look to events that occurred after the search or to the subjective intent of the officers; rather, the court looks at the "objective facts known to the officers at the time of the search." *Id*. at 1075. Probable cause "may come from a confidential informant's tip, when sufficiently detailed and corroborated by the independent investigation of law enforcement officers." *Lumpkin*, 159 F.3d at 986.

Here, probable cause is evident. As stated in the complaint affidavit, "ROSE provided the CI with approximately eight grams of methamphetamine. ROSE instructed the CI to deliver the said methamphetamine to a buyer in a local hotel." D.E. 1-1 at 2. As stated in Defendant's motion, "Law enforcement observed defendant – after meeting the CW at the CW's vehicle, and as the CW notified law enforcement that he/she had just been handed a baggie containing over 7 grams of suspected methamphetamine – walk back and enter the driver's side of his vehicle." D.E. 56 at 1. Before the dog ever approached Defendant's car, officers literally watched

Defendant provide methamphetamine to a confidential informant and then return to his car. The informant also reported that Defendant had told him to deliver the drugs to a third party.

Under the common-sense totality-of-the-circumstances standard, the observed controlled purchase alone established probable cause to arrest Defendant and search Defendant and his vehicle incidental to the arrest and under the warrantless-vehicle-search rule. Common sense suggests that Defendant, having just transferred 7-8 grams of methamphetamine to an informant, would likely possesses evidence of crime in his vehicle. The facts and circumstances leading up to the K-9 search are not in dispute and the Court finds they are more than adequate to give rise to a fair probability that evidence of the transaction would be found in Defendant's car. The K-9's alert therefore was not necessary for establishing probable cause and the status of the creature's certification is not relevant.

## Conclusion

For the reasons discussed above, the undersigned **RECOMMENDS** that Defendant's motion to suppress (D.E. 56) be **DENIED.** The Court issues this Recommended Disposition pursuant to 28 U.S.C. § 636(b)(1)(B). The parties should consult that statute and Federal Rule of Criminal Procedure 59(b) concerning the right to appeal to the District Judge. Any objection must be filed within **fourteen days** of the entry of this order. Failure to object per Rule 59(b) waives a party's right to review. Upon expiration of that fourteen-day period, this matter will be submitted to District Judge Boom for her consideration.

This the 8th day of February, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge