UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 6:19-CR-83-CHB-CJS-1 |
| Plaintiff, | ) | |
| | ) | Civil Action No. 6:22-CV-133-CHB-CJS |
| v. | ) | |
| | ) | |
| TYLER ROSE, | ) | **ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on the Order and Report and Recommendation ("Recommendation") of United States Magistrate Judge Candace J. Smith, [R. 116]. In the Recommendation, the Magistrate Judge addressed Defendant Tyler Rose's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion"), [R. 85], and recommends denying said motion. [R. 116]. The Recommendation was entered on November 25, 2024. *Id.* Rose filed objections to the Recommendation, [R. 120].[1] For the reasons set forth herein, the Court will overrule Rose's objections, [R. 120], adopt the Magistrate Judge's Recommendation, [R. 116], and deny Rose's § 2255 Motion, [R. 85].

## I.     BACKGROUND

On May 11, 2021, Rose pled guilty pursuant to a Plea Agreement to Count 1 of the Indictment—possession with the intent to distribute fifty grams or more of a substance or mixture

---

[1] Rose requested an extension of time to file his objections, [R. 118], which the Court granted, [R. 119]. The extension gave Rose until January 2, 2025, to file his objections. *Id.* Rose's objections are dated January 1, 2025, and postmarked January 3, 2025. *See* [R. 120]. The United States has not objected to the Court considering the objections, and the Court will deem them timely filed for the Court's consideration.

containing methamphetamine—in exchange for dismissal of the remaining counts. [R. 7
(Indictment)]; [R. 70 (Rearraignment Minutes)]; [R. 72 (Plea Agreement)]. On September 16,
2021, he received a below-Guidelines range sentence of 130 months imprisonment, followed by
five years of supervised release. [R. 84 (Judgment)].

Rose filed the instant § 2255 Motion on July 20, 2022. [R. 85]. In his motion, Rose raises
nine claims, all of which are based on ineffective assistance of his retained counsel, Dan Carman.
*See generally id.*; [R. 116, p. 10].[2] These claims can be broadly categorized as asserting two
grounds for ineffective assistance of counsel: (1) "Attorney Carman had a conflict of interest
involving a prior client, which Rose argues influenced Attorney Carman's behavior during plea
negotiations and, in turn, rendered his decision to plead guilty involuntary," [R. 116, p. 10 (citing
Rose's first, second, third, fifth, seventh, and eighth claims)], and (2) "Attorney Carman failed to
properly litigate the Motion to Suppress" filed in Rose's case, *id.* (citing Rose's fourth, sixth, and
ninth grounds for relief); *see also* [R. 85, p. 6 (discussing the motion to suppress in Rose's third
claim)][3]. The United States responded in opposition, arguing that "[t]he Court should deny Rose's
28 U.S.C. § 2255 [M]otion because he is unable to show that his counsel was ineffective," [R. 108,
p. 1], and Rose replied, [R. 111]. Upon review, Magistrate Judge Smith determined that "the record
does not support Rose's claim that his plea was coerced or involuntary" based on the performance
of Carman, [R. 116, p. 17], and that "Rose's ineffective-assistance challenge to his counsel's pre-
plea litigation of the Motion to Suppress has been waived due to Rose's admission of guilt pursuant

---

[2] Rose also submitted a supplemental memorandum, styled as a "Separate Memorandum," [R. 85-1, pp. 4–6], alleging
the Court lacked jurisdiction over his conduct because there was "little to no logical connection to interstate
commerce[,] . . . [which] is vital and the only way [C]ongress has subject matter jurisdiction." *Id.* at 6. Magistrate
Judge Smith determined that said claim was waived by Rose's failure to raise it on direct appeal and, in any event, is
meritless. *See* [R. 116, p. 8 n.8]. Rose did not address this finding in his objections, so the Court need not review it.

[3] To the extent the page number listed on a filing differs from the page number assigned by the Court's electronic
docketing system, the Court refers to the page number assigned by the docketing system.

to the written Plea Agreement" and, in any case, the Fourth-Amendment claims "lack merit." *Id.* at 19. Ultimately, the Magistrate Judge recommends that this Court deny Rose's § 2255 Motion and further recommends that no Certificate of Appealability be issued. *See id.* at 28. Rose filed objections to the Recommendation, [R. 120], and thus the matter is ripe for review.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(B), a district court judge may designate a magistrate judge to submit findings of fact and recommendations on applications for post-trial relief made by individuals convicted of criminal offenses. Federal Rule of Civil Procedure 72(b)(2) gives a petitioner fourteen days after service to file objections to a Magistrate Judge's report and recommendation. Fed. R. Civ. P. 72(b)(2). This Court must make a *de novo* determination of dispositive matters to which specific objections are made. Fed. R. Civ. P. 72(b)(3); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [the party] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 1997) (citation omitted). Courts need not conduct *de novo* review of general objections that fail to identify specific factual or legal issues, because it duplicates the Magistrate Judge's efforts and wastes judicial economy. *Howard v. Sec. of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Courts construe *pro se* filings more leniently than those prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But courts do not have "an affirmative duty . . . to scrutinize *pro se* [pleadings] to determine whether there is a cause of action other than the one pleaded by the [*pro se* litigant] that is more advantageous to him." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011). Further, a *pro se* litigant must still comply with court rules and procedural

requirements. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Tobias v. State*, No. 18-1892, 2018 WL 8969133, at *1 (6th Cir. Dec. 17, 2018).

## III.     ANALYSIS

As noted above, Rose's § 2255 Motion asserts that his sentence should be vacated on the grounds of ineffective assistance of counsel. The Court will briefly outline the appropriate standard for reviewing claims of ineffective assistance of counsel before evaluating Rose's arguments.

### A.     Ineffective Assistance of Counsel

Ineffective-assistance-of-counsel claims are governed by the standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). When assessing an ineffective-assistance-of-counsel claim, the Court must consider "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. To establish that he was deprived of effective assistance, Rose must show that his counsel's performance was both constitutionally deficient and prejudicial. *Id.* at 687.

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms . . . considering all the circumstances." *Id.* at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. When assessing counsel's performance, the Court must make "every effort . . . to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Id.* The tactical decisions of a defendant's trial counsel are presumed to be part of sound trial strategy and

therefore will not be subject to a successful attack, absent a defendant overcoming such presumption. *Darden v. Wainwright*, 477 U.S. 168, 185–87 (1986).

To prove prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When a defendant has entered a guilty plea, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). However, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017).

The movant must satisfy both prongs of the *Strickland* analysis, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).

### B.    Rose's Objections and Arguments

As the basis for his motion, he alleges that his lawyer operated under a conflict of interest, which rendered Rose's guilty plea involuntary, and that his lawyer failed to properly litigate his Motion to Suppress. *See generally* [R. 85]; [R. 116, pp. 10–11 (explaining Rose's grounds for his § 2255 Motion)]. Rose's objections mainly reiterate the arguments and alleged factual bases made

in his § 2255 Motion, [R. 85], and Reply, [R. 111], to support his ineffective-assistance-of-counsel claims. *See generally* [R. 120]. At no point does he identify any specific objection to Magistrate Judge Smith's Recommendation—such as "that the magistrate judge misapplied a legal standard, ignored a crucial fact, or missed an important case." *See Trumbo v. Bottom*, No. 13–275–ART, 2015 WL 5063766, at *2 (E.D. Ky. Aug. 26, 2015). As such, the Court could decline to consider such general objections. *See id.* at *1–2; *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)); *see also McCready v. Kamminga*, 113 F. App'x 47, 49 (6th Cir. 2004) ("Failure to identify specific concerns with a magistrate judge's report results in treatment of a party's objections as a general objection to the entire magistrate judge's report. A general objection is considered the equivalent of failing to object entirely." (citing *Howard*, 932 F.2d at 509)). When no specific objections are made, this Court is not required to "review [] a magistrate[] [judge's] factual or legal conclusions, under a *de novo* or any other standard." *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Howard*, 932 F.2d at 509.

Nonetheless, the Court has reviewed the record and agrees with the Magistrate Judge's findings. From the best the Court can discern, Rose only objects to Magistrate Judge Smith's findings regarding his motion to suppress. *See generally* [R. 120]. Regardless, the Court will briefly address each ground for relief asserted by Rose in his initial motion.

### 1.   Voluntariness of Guilty Plea

As to Rose's claims that his guilty plea was not knowing and voluntary due to Carman's alleged conflict of interest, the Court agrees with Magistrate Judge Smith that "Rose has failed to demonstrate the underlying premise of his claim—that [] Carman was laboring under a conflict of

interest." [R. 116, p. 11]. Rose alleges that Carman, "prior to representing [Rose,] . . . represented a [d]irty cop in a related case" and "lost all interest in [Rose's] case" after Rose "chose not to cooperate [against] the dirty cops." [R. 85, p. 5]; *see also id.* at 12 (arguing Carman "intentionally misrepresented [him]" "once [Rose] wouldn't cooperate [against] [Carman's] prior client"). The Magistrate Judge found that Carman represented the law enforcement officer, Constable Gary Baldock, at his initial appearance and remained on the case for only five days, prior to Carman's representation of Rose in the current matter. [R. 116, p. 13 (citing *United States v. Wallace*, No. 6:20-cr-11-REW-HAI (E.D. Ky.)].

Currently, in the Sixth Circuit, there is "an open question" about the proper standard to apply in evaluating alleged conflicts of interest in § 2255 motions based on ineffective assistance of counsel. *See Ball v. United States*, No. 17-2495, 2024 WL 659981, at *4 (6th Cir. Feb. 16, 2024); *see also* [R. 116, pp. 12–14 (discussing the different standards)]. In addition to the *Strickland* standard articulated above, which requires a showing of prejudice, the *Sullivan* standard—articulated by the Supreme Court in *Cuyler v. Sullivan*, 446 U.S. 335 (1980)—provides that a defendant who can show "'his counsel actively represented conflicting interests'" that "'adversely affected his lawyer's performance'" "'need not demonstrate prejudice in order to obtain relief.'" *Ball*, 2024 WL 659981, at *4 (quoting *Sullivan*, 446 U.S. at 348–50). While the Sixth Circuit has made clear that the *Strickland* standard applies to § 2254 cases involving claims of a conflict of interest based on successive client representation (as opposed to multiple concurrent representations), it is less clear which standard applies to § 2255 motions based on such conflicts. *Id.* Despite this "open question," *id.*, the question of which standard to apply need not be answered if there is no actual conflict of interest. *See id.* at *4–8 (noting that the "question need not be answered [ ] because [the petitioner's] motion would fail under either *Sullivan* or *Strickland*

for the reasons discussed below," and going on to find that neither attorney operated under an actual conflict of interest). The Magistrate Judge asserts that "[t]his Court need not concern itself with the open question identified in *Ball* because Rose has failed to demonstrate that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." [R. 116, p. 13 (cleaned up)]. This Court agrees.

To demonstrate an actual conflict of interest, Rose would have to "point to specific instances in the record that suggest an actual conflict or impairment of [Carman's] interests," including "a factual showing of inconsistent interests[,] and demonstrate that [Carman] made a choice between possible alternative courses of action" that were helpful to Baldock and harmful to Rose. *See Moss v. United States*, 323 F.3d 445, 463 (6th Cir. 2003) (internal quotation marks and citations omitted). "[I]f the conflict is . . . irrelevant or the conflict is merely hypothetical, there is no constitutional violation." *Id.* at 463–64.

The Court agrees with the Recommendation that "Rose has failed to demonstrate that [] Carman had a conflict of interest based on his prior representation of Gary Baldock" when the representation was "successive"—Carman represented Rose *after* Baldock, not concurrently—and Baldock "was not a co-defendant or trial witness in Rose's case." [R. 116, p. 14]; *see also Ball*, 2024 WL 659981, at *4 (defining a successive representation conflict as one "where defense counsel previously represented a co-defendant or trial witness" (quoting *Moss*, 323 F.3d at 459)). And Rose has not demonstrated that this was an "atypical form of successive representation" that might warrant closer scrutiny. *See United States v. Taylor*, 489 F. App'x 34, 41 (6th Cir. 2012) ("[P]rejudice is not presumed in a successive-representation case unless it is an atypical form of successive representation, where the facts more closely resemble a concurrent-representation case." (citation and internal quotation marks omitted)). Moreover, although Rose argues that

- 8 -

Michael Wallace, Baldock's co-defendant, "was connected to [his] case," [R. 111, p. 4], he fails to demonstrate any connection between Wallace and Carman, let alone a conflict. *See* [R. 116, pp. 14–15].

Nevertheless, Rose argues that a conflict of interest existed because Carman relayed to Rose the United States' plea offer, which involved cooperation against Wallace and Baldock. *See* [R. 85, pp. 4–5]. However, despite Rose's apparent disinterest in cooperating with the Government, Carman had a duty to present plea offers from the government to his client. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) ("[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). Indeed, courts have found conflicts to exist "where, as a result of joint representation of co-defendants, or successive representation of co-defendants in the same proceeding, defense counsel *fails* to explore possible plea negotiations." *Cf. Moss*, 323 F.3d at 465 (emphasis added).

In any case, the record is clear that Rose knowingly and voluntarily entered into his Plea Agreement. For example, this Court scrupulously questioned Rose at the time of his guilty plea to ensure the plea was knowing and voluntary. *See* [R. 102 (Rearraignment Tr.)]. Under oath, Rose answered in the affirmative when the Court asked him whether he had "been satisfied with the advice and counsel that [he had] received in this case from Mr. Carman." *Id.* at 13:20–23. After the United States explained the terms of his Plea Agreement, including paragraph thirteen, in which Rose agreed that he entered the Agreement voluntarily, Rose agreed it matched his understanding of the terms. *Id.* at 20:6–18; *see also* [R. 72, ¶ 13 ("The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement . . . and that the

Defendant's entry into this Agreement is voluntary.")]. This Court explicitly questioned Rose on the voluntariness of his guilty plea:

> THE COURT: Mr. Rose, next I have to make sure that your plea is voluntary. So has anyone threatened you or anyone close to you or forced you in any way to plead guilty today?
>
> THE DEFENDANT: No, ma'am.
>
> THE COURT: It is your choice to plead guilty?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Have any promises been made to you to get you to plead guilty, other than what's in your plea agreement?
>
> THE DEFENDANT: No, ma'am.

[R. 102, p. 23:1–10]. Following this exchange, the Court explicitly found "that Mr. Rose under[stood] the plea agreement . . . and that the plea . . . [was] voluntarily made." *Id.* 23:12–14.

In the Sixth Circuit, "[a] criminal defendant is bound by the answers he gives when 'the court has scrupulously followed the required procedure' for a properly conducted plea colloquy." *United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). Specifically, "[i]n a collateral attack on a conviction, a transcript of proceedings is generally sufficient to demonstrate that the defendant's conduct was voluntary and knowing." *Underwood v. United States*, No. 18-5793, 2018 WL 7140598, at *2 (6th Cir. Nov. 19, 2018) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)).

The Court finds that Carman was not operating under a conflict of interest based on his limited prior representation of Baldock. In any case, the record—including Rose's own assertions at his Rearraignment—make clear that his plea was knowing and voluntary. As such, the Court will adopt the Recommendation as to the voluntariness of Rose's guilty plea.

## 2.    Failure to Properly Litigate the Motion to Suppress

The second ground for Rose's § 2255 Motion and objections relates to the Motion to Suppress filed by Carman on behalf of Rose that sought to suppress evidence of a search of his vehicle. *See generally* [R. 85]; [R. 120]; [R. 56 (Motion to Suppress)]. Rose was arrested after law enforcement watched him sell methamphetamine to a Confidential Informant ("CI") and confirmed with the CI that Rose handed the CI drugs and instructed the CI to bring the drugs to a hotel. *See* [R. 61, pp. 1–2 (Recommended Disposition on the Motion to Suppress) (first citing [R. 1-1, pp. 2–3 (Affidavit in Support of Criminal Complaint)]; then citing [R. 56, pp. 1–2])]. Law enforcement then approached Rose's vehicle with a K-9 drug sniffing dog who alerted law enforcement to the presence of illegal drugs in the car. *See id.* at 2 (citations omitted). Law enforcement proceeded to search Rose's vehicle and found illegal narcotics, paraphernalia, weapons, several cellphones, and money. *See id.* (citations omitted). The Motion to Suppress sought to exclude all evidence obtained in the vehicle search and was based on the allegedly improper certification of the K-9 and his handler. *See* [R. 56, p. 2].

Rose alleges Carman improperly litigated the motion because Carman "presented only part of [his] arguement [sic][,] . . . used [the government's] version of events," [R. 85, p. 6], "failed to object to the prosecutor in his response to [the] motion to suppress," *id.* at 7, "failed [Rose] [by] waiving the hearing [he] requested," *id.*, and "would not investigate [] the time and place of [Rose's] arrest." *Id.* at 13; *see also* [R. 116, p. 20 n.6 (summarizing Rose's arguments)]. Magistrate Judge Smith, however, recommends the Court find that Rose's knowing and voluntary guilty plea waived any argument that Carman improperly litigated the Motion to Suppress, and, in any case, the argument is meritless. *See* [R. 116, p. 19].

Rose's objections do not address waiver or the fact that he pled guilty despite his apparent belief that there were additional grounds to challenge the charges against him. *See* [R. 120]. Instead, Rose's objections focus on—and largely reiterate—why Carman was allegedly ineffective in failing to litigate the Motion to Suppress. *See generally id.* In his objections, Rose argues that "Carman was ineffective for not submitting [Rose's] version" of the facts underlying the stop and search, which he alleges "conflict[s] with the government['s] version." *Id.* at 1. Moreover, he states that Carman "was also ineffective for not ever meeting with [him] to get [his] side of the story or [go] over [Rose's] discovery with [him] and preparing a defense strategy before tendering a motion to suppress." *Id.* Finally, Rose takes issue with the fact that Carman admitted to being hesitant to file the Motion to Suppress and waived a hearing. *Id.*; *see also id.* at 2 (arguing that not requesting a hearing "[gave] the appearance to the judge that [Carman] [did not] believe [Rose's] [Fourth] Amendment [rights] [were] violated").

The Magistrate Judge first found that, in admitting guilt in his voluntary guilty plea, Rose waived any ability to challenge the constitutionality of pre-plea actions. *See* [R. 116, pp. 18–19 (first citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); then citing *United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001))]. The United States Supreme Court has made clear that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. This applies to allegedly invalid searches before a guilty plea. *See Stiger*, 20 F. App'x at 308–09 (applying *Tollett*, 411 U.S. at 267). Challenges related to pre-plea constitutional issues are generally limited to claims ineffective assistance of counsel that may have affected the knowing and voluntariness of a plea. *See id.*; *Armstrong v. Wainwright*, No. 19-3446, 2019 WL 5874623,

at *3 (6th Cir. Oct. 8, 2019) (finding the defendant's assertion "that trial counsel rendered ineffective assistance by withdrawing the motion to suppress at the trial court's request" in a 28 U.S.C. § 2254 motion "[did] not deserve further consideration because pre-plea claims of ineffective assistance are forfeited under *Tollett* if they do not relate to the voluntariness of the plea" (citations omitted)).

Relying on *Tollett* and its progeny, Magistrate Judge Smith found that "Rose's ineffective-assistance challenge to his counsel's pre-plea litigation of the Motion to Suppress has been waived due to Rose's admission of guilt pursuant to the written Plea Agreement." [R. 116, p. 19 (first citing *Tollett*, 411 U.S. at 267; then citing *Stiger*, 20 F. App'x at 308–09)]. However, to the extent Rose's argument is that Carman's alleged failure to litigate the motion properly rendered his guilty plea unknowing and involuntary, the Court will evaluate the merits of Rose's claim. *See* [R. 85, p. 11 (indicating he thought Carman's failure to object to the Magistrate Judge's Recommended Disposition on the Motion to Suppress "made going to trial . . . pointless")]; *cf. United States v. Pullum*, No. 3:11-CR-143-H, 2014 WL 3740588, at *5 (W.D. Ky. July 30, 2014) (finding claim of ineffective assistance of counsel based on counsel's failure to pursue suppression was not waived because it "would appear [] that this particular claim of ineffective assistance of counsel is one which runs directly to the voluntariness of the [plea] waivers, given [the defendant's] insistence that he otherwise would have declined to plead guilty or to execute the plea agreement and plea supplement, and would have insisted upon proceeding to trial, but for the deficient performance of his trial attorney").

In any case, notwithstanding any potential waiver, the Court agrees with Magistrate Judge Smith that, "[e]ven if Rose's suppression-related arguments are not considered waived, they nonetheless lack merit." [R. 116, p. 19].

Rose's claims relating to the Motion to Suppress are evaluated under *Strickland*'s two-prong analysis: (1) whether Carman's actions fell below an objective standard of reasonableness measured against professional norms, and (2), if so, whether Rose was prejudiced by those actions such that the outcome of the case would have been different (i.e., Rose would not have pled guilty). *See Strickland*, 466 U.S. at 687–94; *Hill*, 474 U.S. at 59. In addition, to show prejudice, Rose must demonstrate that his Fourth Amendment arguments would have been successful and resulted in suppression. *Carter v. Parris*, 910 F.3d 835, 839 (6th Cir. 2018) ("[A defendant] cannot show prejudice if the motion to suppress would have been denied regardless of his attorneys' arguments." (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986))).

As Magistrate Judge Smith found, "Rose has failed to prove that his Fourth Amendment claims are meritorious," and "on this record, it is hard to imagine that any meritorious arguments existed to raise in the [initial] Motion to Suppress." [R. 116, p. 20]. Indeed, in a telephonic status conference held on the Motion to Suppress, [R. 97 (Tr. Tel. Conf.)], Carman expressed hesitance about the motion and was "candid" with the Court, saying he filed the motion because "it was something [he] felt like [he] needed to do for [Rose]." *Id.* at 4:2–4. He also said that "while [he] was sure [Rose] would [have] love[d] a hearing," *id.* at 4:25, "it would seem not . . . necessary to have a hearing" because "the only things that could be in dispute potentially would be the underlying facts concerning the reliability of the canine" and, as the Court confirmed, the government's position was that "there was an independent basis to search . . . without consideration of the sniff." *See id.* at 5:7–6:3.

As the Court has already determined, there *was* an independent basis for the search of Rose. *See* [R. 61, pp. 3–4 ("[T]he dog's activity is irrelevant because, even before the dog sniff, law enforcement possessed probable cause to search Defendant's vehicle based on the controlled

buy.")]; *see also* [R. 63, p. 4 (Order Adopting Recommended Disposition) ("[T]he K-9 unit's alert was not necessary to establish probable cause, and the certification of the canine and his handler is irrelevant." (citation omitted))]. Namely,

> prior to the K-9 unit's involvement, the officers witnessed Defendant provide methamphetamine to the CI, instruct the CI to deliver the drugs to a buy, and then return to the car. . . . "[U]nder the common-sense totality-of-the-circumstances standard," the controlled meeting, which took place under law enforcement officer's surveillance, was sufficient to establish probable cause to search Defendant's vehicle.

[R. 63, p. 4 (internal citation omitted) (citing [R. 61, pp. 4–5])]. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Despite Rose's contention that "[i]t wasn't a sound strategic choice to . . . not request a hearing," [R. 120, p. 2], the Court cannot say that Carman was ineffective when the record overwhelmingly demonstrates probable cause for the search of Rose and his vehicle, and Carman had clearly reviewed the record and made a strategic decision based on the evidence.

Rose, however, argues that the motion filed by Carman did not present "[Rose's] version[] of the . . . stop that conflict[s] with the government's version." [R. 120, p. 1]. According to Rose, in addition to the issues with the K-9's certification, his "challenge to the search was that it happened before the search of [his] person," *id.* at 1, and that "the state complaint affidavit [] conflicts with the federal affidavit." *Id.* at 2. His "side of the story," *id.* at 2, is that "the transaction [with the CI] never happened and . . . it was subterfuge to stop [him] and start an investigation." [R. 85, p. 11];[4] *see also* [R. 111, p. 1 ("[T]he 'controlled meeting' was not true.")]. He also finds fault in Carman's refusal to hire an investigator to observe the scene where the controlled buy took place because, according to Rose, it would "show it was not possible for [law enforcement] to

---

[4] Rose also alleges that "the informant used was not reliable enough to go apply for a warrant for [his] arrest," [R. 85, p. 11], but Rose was not arrested pursuant to an arrest warrant.

witness any meeting." [R. 120, p. 2]. He bases this claim on observations by family members about the scene where he was arrested. *See* [R. 85, p. 13].

In general, "strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based." *Strickland*, 466 U.S. at 681. Thus, although Rose believes that his version of the events "was key to contesting probable cause," [R. 120, p. 1], "it was reasonable for [] Carman to target what he viewed as the weakest link in the Government's case according to his professional judgment" and focus on the K-9's qualifications. *See* [R. 116, p. 22 (quoting *Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."))]. Carman's strategic choice to argue only the issue he believed to be the strongest in the Motion to Suppress is not grounds for an ineffective-assistance-of-counsel claim. *Cf. Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018) (explaining that counsel's failure to file a motion to suppress is only deficient performance if "'no competent attorney would think a motion to suppress would have failed'" and "counsel had no reasonable strategic rationale for not filing the motion" (quoting *Premo v. Moore*, 562 U.S. 115, 124 (2011))).

In any case, raising such arguments would have been unsuccessful. As Magistrate Judge Smith noted, "[t]o the extent Rose is arguing that law enforcement may *never* search a person prior to making an arrest, he is wrong." [R. 116, p. 22 (emphasis in original)]; *see also id.* (citing *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (explaining when law enforcement many conduct a pre-arrest search under the search-incident-to-lawful-arrest exception). Rose argues that "[i]n the [Sixth Circuit,] it does matter at what point and if the arrest happened as a result of the search that [he is] contesting." [R. 120, p. 1]. While it is true in a general sense that the order of events involving a search and arrest is relevant, it does not change the outcome in this case. Even

if the vehicle search occurred before Rose was subsequently arrested, a person may be searched before arrest pursuant to the search-incident-to-a-lawful-arrest exception "as long as 'the formal arrest follows quickly on the heels of the challenged search of his person' and the fruits of that search are not necessary to sustain probable cause to arrest him." *Montgomery*, 377 F.3d at 586 (cleaned up); *see also* [R. 116, p. 22]. The officers had probable cause based on their viewing of Rose's transaction with the CI and the CI's subsequent report to the officers—"all based on observations that occurred *before* law enforcement even approached Rose." *See* [R. 116, p. 22 (emphasis in original)]; [R. 63, p. 4]; *see also* [R. 116, p. 25 (finding that even if law enforcement could not have *seen* the controlled buy, the sale was corroborated by the CI—whom they had an ongoing relationship with—and by the physical evidence of the drugs exchanged)].

As to the affidavits, Rose's objection is based on the order of events described in the two documents "and what was actually observed by the officers prior to approaching [him]." [R. 120, p. 1]; *see also* [R. 111, p. 1 ("The only thing the officers acted on that connected [Rose] to anything illegal prior to the search was the word of [the CI].")]. However, upon review of the documents— the federal Complaint, [R. 1], and the "State Affidavit," which appears to be an investigation report from a state law enforcement officer, [R. 110-1, pp. 14–17]—both align on the basic facts supporting probable cause, including witnessing the CI's transaction with Rose. Presentation of these documents at a hearing would not have changed the outcome of the Motion to Suppress, despite Rose's contentions to the contrary. *See* [R. 120, p. 1 (arguing a hearing would have "provided [him] a chance to fully present [his] arguement [sic]," including the federal Complaint and "state complaint")]. Moreover, the Magistrate Judge correctly pointed out that "Rose fails to recognize that the search of his person and vehicle were not supported by an affidavit," and, in any case, "[e]ven if the Criminal Complaint was defective in some way, a grand jury returned a federal

Indictment against Rose and, therefore, his counsel cannot be considered ineffective for failing to challenge the Complaint." [R. 116, pp. 23–24 (citations omitted)].

Finally, Rose argues that Carman was ineffective because he failed to object to Magistrate Judge Smith's Recommended Disposition regarding his Motion to Suppress which, according to Rose, waived his right to appeal the denial of the motion. *See* [R. 85, p. 11 ("I couldn't contact [Carman] before the District Judge adopted the denied motion to suppress . . . due to [Carman] not objecting which waived my rights to appeal and made going to trial. . . pointless")]. However, it was Rose's guilty plea that waived his ability to appeal the denied Motion to Suppress—not Carman's failure to file a reply or objections. *See* [R. 116, p. 25]; *see also Brown*, 2024 WL 4554674, at *2 (explaining that appellate review is available under the plain error standard when a defendant does not object to a recommended disposition on a motion to suppress). To have preserved this argument, Rose's Plea Agreement would have needed to specifically reserve the right to appeal the denial of the Motion to Suppress, which it did not. *See United States v. Bell*, 350 F.3d 534, 535 (6th Cir. 2003) ("To preserve one's right to appeal a pre-plea motion[,] . . . there must be: 1) a conditional guilty plea in writing; 2) that reserves the right to appeal a specified pre-trial motion; and 3) that evidences the government's consent." (citing *United States v. Herrera,* 265 F.3d 349, 352 (6th Cir. 2001))); [R. 72]. To the extent Rose wanted to reserve the issue for appeal, he did not raise such an issue, and he knowingly and voluntarily accepted the Plea Agreement that included waivers of his rights to appeal. *See* [R. 102, pp. 20:19–21:3 (discussing the appeal waivers with Rose and ensuring he understood the waivers and had discussed them with counsel)].

Carman's decision not to file a reply or objections regarding the Motion to Suppress did not cause forfeiture of Rose's right to appeal the denial. *See Bell*, 350 F.3d at 535; *Brown*, 2024

WL 4554674, at *2. Regardless, the record makes clear that Carman considered doing so and made the reasoned choice not to. In the telephonic status conference on the motion, he acknowledged that "the government's response [made] sense from the government's point of view . . . so [he] didn't really have a particularly artful reply to file." [R. 97, p. 4:12–14]. Moreover, in a letter to Rose, he stated that, "[a]s [he] suspected all along, despite real issues . . . with the K-9's certification[,]. . . the Court believe[d] that there was separate probable cause," and that he was "virtually certain [filing objections] [would] not make a difference." [R. 110-1, p. 8]. The Court cannot say this strategic choice was deficient. *See Strickland*, 466 U.S. at 690–91.

For the foregoing reasons, the Court finds that Carman was not ineffective and moreover agrees with the Recommendation that "Rose has failed to prove that his Fourth Amendment claim has merit." [R. 116, p. 26]; *see also Kimmelman*, 477 U.S. at 375 (holding that a defendant must show their Fourth Amendment claim would have been successful to show prejudice). As such, the Court will adopt the Recommendation as Carman's litigation of the Motion to Suppress.

### 3.    Remaining Arguments

The Court will briefly address Rose's three remaining arguments: that Carman never met with him to review discovery, that Carman's assistance was ineffective due to cumulative error, and that Rose is entitled to a hearing on this §225 Motion. Magistrate Judge Smith recommends that the Court deny relief as to the first two arguments. Rose did not request a hearing until after the Recommendation was entered and did so through a separate motion. *See* [R. 118]; *see also* [R. 119, p. 3 (construing [R. 118] as a "motion for appointment of counsel, an evidentiary hearing, and an extension of time to file objections")]. Magistrate Judge Smith denied his motion for a hearing. [R. 119].

As to Rose's claim that Carman refused to go over discovery with him, the Recommendation states that "Rose does not specify what discovery he would have reviewed, or how his review of specific discovery would have changed his decision to enter a guilty plea," and "[h]is failure to do so is fatal to his claim for relief." [R. 116, p. 26 (citing *Noble v. United States*, No. 2:10-CR-51-JRG, 2018 WL 4441240, at *11 (E.D. Tenn. Sept. 17, 2018))]. In his objections, Rose similarly reiterates only that Carman was "ineffective for not ever . . . going over [his] discovery with [him] and preparing a defense strategy before tendering a motion to suppress." [R. 120, p. 1]; *see also* [R. 111, p. 3 ("[Rose] and [Carman] never once set [sic] down together and looked at any of [Rose's] discovery.")]. As Magistrate Judge Smith found, this lack of specificity is fatal to Rose's argument. *See* [R. 116, p. 26]; *Noble*, 2018 WL 4441240, at *11 (finding claim of ineffective assistance of counsel based on counsel's alleged failure to review discovery with the "conclusory" such that it "[did] not state a claim cognizable under § 2255" when the plaintiff "[did] not identify the discovery materials he wished to review" or "provide any details as to the contents of those discovery materials").[5]

Rose's objections do not mention the Recommendation's conclusion that it was unnecessary to conduct a cumulative error analysis. *See* [R. 116, pp. 26–27]; *see generally* [R. 120]. In any case, the Court agrees that because Rose's claims are meritless, as discussed at length both here and in the Recommendation, the Court need not address cumulative error. *See* [R. 116, pp. 26–27]. Indeed, when a defendant's "allegations of ineffective assistance are groundless, there is no need to conduct a cumulative error analysis." *United States v. Brumley*, No. CR 14-32-GFVT-CJS-1, 2017 WL 10637727, at *16 (E.D. Ky. Aug. 9, 2017), *report and*

---

[5] In addition to being meritless, Rose's claim is belied by his own words elsewhere in his objections when he states that Carman "was hired in August of 2020[,] [and] [h]e went over [the] discovery" before discussing it with Rose and his family. [R. 120, p. 4].

*recommendation adopted*, No. 6:14-CR-0032-GFVT-1, 2018 WL 6003863 (E.D. Ky. Nov. 15, 2018).

Finally, in a post-Recommendation motion and in his objections, Rose requests "a hearing . . . to present [his] grounds more clear[ly]," [R. 118, p. 1], and "to personally explain how Mr. Carman was ineffective by failing to investigate[,] prepare, and litigat[e] the motion to suppress." [R. 120, p. 2]. While a court must hold an evidentiary hearing on a § 2255 motion if the movant raises a factual dispute, a court need not hold an evidentiary hearing if "the record conclusively shows that the petitioner is entitled to no relief" and "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (internal quotations and citations omitted); *see also Valentine v. United States,* 488 F.3d 325, 333 (6th Cir. 2007) ("[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." (internal quotation marks and citation omitted)); *Amr v. United States*, 280 F. App'x 480, 485–86 (6th Cir. 2008) (finding "the district court was correct to deny an evidentiary hearing," when "there [was] nothing in the record to indicate that [the] [d]efendant would have been able to prove his allegations at an evidentiary hearing"). As an initial matter, the Court notes this request was already denied by Magistrate Judge Smith, [R. 119]. Regardless, the Court has reviewed the record and agrees that "the record in this case conclusively shows that Rose is not entitled to relief[,]" and "Rose has not identified any additional evidence he could present at an evidentiary hearing." *Id.* at 2.

### 4.    Certificate of Appealability

Magistrate Judge Smith recommends denying Rose a Certificate of Appealability under 28 U.S.C. § 2253 because "reasonable jurists would not debate the denial of Rose's § 2255 Motion or conclude that 'the issues presented are adequate to deserve encouragement to proceed further.'" [R. 119, p. 27 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))]. Rose apparently objects to this by "requesting a [C]ertificate of [A]ppealability to proceed to the [Sixth Circuit] [C]ourt of [A]ppeals" in his objections. *See* [R. 120, p. 2].

Under § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). A "substantial showing" means a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack*, 529 U.S. at 484 (internal citation and quotation omitted). Thus, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* In this case, the Court agrees with the Magistrate Judge's conclusion that reasonable jurists could not debate whether Plaintiff's motion should have been resolved differently. Accordingly, the Court finds that Plaintiff has not made a "substantial showing of the denial of a constitutional right" under § 2253(c)(2), and as a result, a certificate of appealability should not issue.

## IV.    CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** as follows:

1.    The Court **OVERRULES** Defendant Tyler Rose's Objections, [**R. 120**].

2.      As supplemented by this Order, the Court **ADOPTS** Magistrate Judge Smith's Recommendation, [**R. 116**], as the opinion of this Court.

3.      Defendant Rose's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, [**R. 85**], is hereby **DENIED**.

4.      The Court **DENIES** a certificate of appealability.

5.      A separate judgment shall be issued contemporaneously with this Order.

This the 10th day of June 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY